```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                     FORT WAYNE DIVISION
```

J.C. BROWN, SPIRIT OF            )
AMERICA CORPORATION,             )
and AMAZE-N-TOW, LLC,            )
                                 )
    **Plaintiffs,**            )
                                 )
    v.                        )    Case No. 1:06-cv-218
                                 )
ESLER C. WALKER,                 )
                                 )
    **Defendant.**             )

## REPORT and RECOMMENDATION

    This matter is before the Court on the Plaintiffs' Motion to Amend Default Judgment. Plaintiffs ask the Court to amend the September 30, 2009, entry of default judgment against the Defendant (Docket # 166) to include an award of damages, attorney fees, costs, and a permanent injunction. (Docket # 167.) The District Court Judge, Theresa L. Springmann, entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1), and Northern District of Indiana Local Rule 72.1, referring this matter to the undersigned Magistrate Judge to conduct a hearing on the motion and to prepare a report and recommendation. (Docket # 176.)

    Based on the following, this Report and Recommendation recommends that the motion be GRANTED and the Plaintiffs be awarded monetary damages totaling $230,908.30, attorney fees in the amount of $58,131.25, and costs in the amount of $405.09. It is also recommended that a permanent injunction issue preventing the Defendant from using the Plaintiffs' trademarks or any confusingly similar trademarks.

# I. PROCEDURAL HISTORY

On May 30, 2006, Plaintiffs Spirit of America Corporation, Amaze-N-Tow, LLC, and J.C. Brown filed suit against Esler Walker, alleging, in considerable detail, claims for trademark infringement, false designation of origin, unfair competition, conversion, breach of duty of loyalty, and tortious interference. (Docket # 1.) After three and a half years of increasingly vexatious litigation, a default judgment was entered against Walker, who is representing himself, as a sanction for his repeated failure to comply with the Court's orders.[1] (Docket ## 165, 166.)

On October 15, 2009, the Plaintiffs filed a Motion to Amend the Default Judgment to award relief including damages, attorney fees, and the issuance of a permanent injunction. (Docket # 167.) The matter was referred to the Magistrate Judge for all necessary proceedings. (Docket # 176.) Accordingly, a hearing was set for May 17, 2010, at 8:30 a.m. in the E. Ross Adair Federal Courthouse in Fort Wayne, Indiana. On May 13, 2010, Walker filed a Notice of Waiver of Opportunity to Appear and Contest Damages, indicating that he did not intend to appear at the hearing, in effect, conceding damages.[2] (Docket # 178.)

On May 17, 2010, and with Walker absent, a damages hearing was held and concluded. Documents were received into evidence and testimony was heard from J.C. Brown, owner of Spirit of America; Cindy Ralph, an employee of Spirit of America; and, on the issue of attorney fees, Brian Heck, attorney for the Plaintiffs. Based on the following findings of facts and conclusions of law, this Court recommends that the default judgment be amended to include an award of $230,908.30 in monetary damages, $58,131.25 in attorney fees, $405.09 in costs, and

---

[1] Judge Sprinmann's September 30, 2009, Opinion and Order granting the default judgment sets out a thorough history of Walker's obfuscation and intransigence concerning this lawsuit. (Docket # 165.)

[2] Walker filed another copy of his notice on May 17, 2010. (Docket # 180.)

that a permanent injunction issue against Walker, preventing any future use of the Plaintiffs' trademarks.

## II. FINDINGS OF FACT[3]

On September 30, 2009, a default judgment was entered against Walker as a sanction for his repeated failure to comply with Court orders. (Docket # 165, 166.) As a result, all of the Plaintiffs' well-pled allegations in their complaint are accepted as true. *Robinson v. Doug & Steve Const., Inc.*, No. 2:09-cv-242, 2010 WL 401506, at *2 (N.D. Ind. Jan. 28, 2010). Moreover, "[a] default judgment establishes, as a matter of law, that a defendant is liable to a plaintiff for each cause of action in the complaint." *Id.* (citing *E360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007)).

Accordingly, it has already been established as a matter of law that Walker is liable to the Plaintiffs for each count of their complaint; that is, the well-pled allegations of trademark infringement, unfair competition, conversion, breach of duty of loyalty, and tortious interference are accepted as true. The following findings of fact therefore, principally address the one remaining issue before the Court—the amount of damages sustained by the Plaintiffs as a result of Walker's misconduct, and to the extent relevant, their request for injunctive relief.

    1. Spirit of America is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. (Compl. ¶ 2.)

    2. J.C. Brown is the president of Spirit of America. (Compl. ¶ 3.)

    3. Amaze-N-Tow is a limited liability company with Spirit of America as its sole member. (Compl. ¶ 4; Docket # 131.)

---

[3] So as to comply with Fed.R.Civ.P. 52(a) the Court makes the following Findings of Fact which will be set out in numbered fashion. Any Finding of Fact deemed to be a Conclusion of Law is hereby incorporated as such and any Conclusion of Law deemed to be a Finding of Fact is hereby incorporated as such.

4. Spirit of America and Amaze-N-Tow sell uniquely designed trailers capable of easily lifting and towing large loads behind a vehicle. These trailers are sold to military and commercial customers and are marketed under the names "Amaze-N-Tow," "ANT," and "CycleTow." Sales are made directly by Spirit of America and Amaze-N-Tow, or by authorized distributors. (Brown Aff. ¶ 11-13.)

5. J.C. Brown is the registered owner of the trademark "Amaze-N-Tow," registration number 3,028,685, used for material handling and load lifting trailers attached to a vehicle. Amaze-N-Tow was registered with the United States Patent and Trademark Office ("PTO") on December 13, 2005. (Brown Aff. ¶ 8; Pls.' Ex. 1, pg. 7.)[4]

6. J.C. Brown is the registered owner of the trademark "ANT," registration number 3,070,520, used for material handling and load lifting trailers attached to a vehicle. ANT was registered with the ("PTO") on March 21, 2006. (Brown Aff. ¶ 9; Pls.' Ex. 1, pg. 9.)

7. CycleTow is not a federally registered trademark, but Spirit of America claims ownership of the mark.

8. Esler C. Walker is a former employee of Amaze-N-Tow, LLC. Walker's duties included manufacturing and selling the material handling trailers. Walker's employment was terminated at least by the spring of 2006. (Brown Aff. ¶ 6.)

9. The retail price of the material handling trailers sold under the names Amaze-N-Tow, ANT, and CycleTow varies between $5,590.00 and $9,995.00. (Brown Aff. ¶ 14.)

10. Walker received weekly gross wages of $700.00. (Brown Aff. ¶ 36.) From December 9, 2005, to January 6, 2006, the time period during which Plaintiffs allege Walker breached his duty of loyalty, he received $3500 in wages. (Brown Aff. ¶ 36.)

11. While employed with Amaze-N-Tow, Walker, who handled the manufacture of the trailer's in Georgia, constructed and sold three (3) Amaze-N-Tow trailers but did not turn over the proceeds of $15,588.00 to Amaze-N-Tow, LLC, as he was required to do. (Brown Aff. ¶ 29; Pls.' Ex. 1, pg. 48.)

12. Amaze-N-Tow, LLC purchased seventy-five (75) hydraulic pumps to be used in the construction of the Amaze-N-Tow trailers. The pumps were purchased in multiple orders on a revolving basis. The average price of a single pump is $274.71. Each Amaze-N-Tow trailer utilizes one pump. (Brown Aff. ¶ 30; Pls.'Ex. 1, pgs. 49-75; Mot. to Am. ¶ 36.)

13. In April of 2006, Brown discovered that Walker had used only fifty-two (52) of the

---

[4]All references to the "Plaintiff's Exhibits" refer to the exhibits admitted into evidence during the May 17, 2010, hearing.

pumps in constructing Amaze-N-Tow trailers. When Brown questioned Walker about the remaining twenty-three (23) pumps, Walker stated that he no longer had them in inventory, but provided no further explanation. The Plaintiffs believe, later verified by an on-site visit to Walker's factory, that Walker still had the pumps and apparently used the 23 pumps to construct his own trailers, keeping the proceeds for himself. Based on the average price per unit, the 23 pumps have a value of $6,318.33. (Brown Aff. ¶ 30; Pls.'Ex. 1, pgs. 49-75; Mot. to Am. ¶ 37.)

14. During Walker's employment, Amaze-N-Tow, LLC reimbursed him $512.60 for what it believed were valid business expenses. Brown later determined that these expenses were not legitimate and demanded that Walker return the funds. Walker has failed to do so. (Brown Aff. ¶ 32; Pls.' Ex. 1, pgs. 76-93.)

15. On April 12, 2006, Brown discovered that Walker spent $2,457.10 from Amaze-N-Tow, LLC's business account to have repairs made to his personal vehicle. Although Brown demanded that Walker return these funds as well, he has failed to do so. (Brown Aff. ¶ 33; Pls.' Ex. 1, pgs. 94-125.)

16. Following his termination, Walker began using the trademarks Amaze-N-Tow, ANT, and CycleTow to describe, market, promote, advertise, and sell his own, but confusingly similar, material handling and load lifting trailers. (Brown Aff. ¶ 17.)

17. Walker also used the trademarks Amaze-N-Tow, ANT, and CycleTow to describe, market, promote, advertise, and sell his products on various websites, including:
- www.amazentowusa.com
- www.geocities.com/amazentowusa
- www.geocities.com/creativebuildingproductsgeorgia

18. Walker used the trademarks Amaze-N-Tow, ANT, and CycleTow to describe, market, promote, advertise, and sell his products in videos he made and uploaded to Google Videos and YouTube.com, including:
- http://www.youtube.com/user/butchwalkeramazentow
- http://www.youtube.com/watch?v=K4kR4XvL0hw
- http://www.youtube.com/watch?v=3CyBin6-db8
- http://www.youtube.com/watch?v=VHQilvGGWyg
- http://www.youtube.com/watch?v=dYvzdIGPwTE
- http://www.youtube.com/watch?v=f9xyqhnzfuc
- http://www.youtube.com/watch?v=Adz76sidssA
- http://video.google.com/videoplay?docid=6108759744778797978&ei=a98eStKMNIyEqQPltZmBDQ&q=amaze-n-tow
- http://video.google.com/videoplay?docid=4684835946638793093&ei=298eSr7THpKkqQ ONvrS5DQ&q=amaze-n-tow

19. According to the YouTube website and testimony at the hearing, the videos have

received over 100,000 combined views as of mid-May, 2010. (Brown Aff. ¶ 21.)

20. On March 29, 2006, Walker sold a trailer under the Amaze-N-Tow name (although it was not a true Amaze-N-Tow) to KD Properties through an entity named Walker & Associates. (Brown Aff. ¶ 27; Pls.' Ex. 1, pgs. 41-47.)

21. On April 20, 2006, Walker issued a Certificate of Origin for another so-called Amaze-N-Tow trailer to Donald C. Bennett through an entity named Amaze-N-Tow, Inc. Amaze-N-Tow, Inc. is not affiliated in any way with Spirit of America Corporation or Amaze-N-Tow, LLC. (Brown Aff. ¶ 27; Pls.' Ex. 1, pgs. 41-47.)

22. On June 1, 2006, Walker issued a Certificate of Origin for a Vehicle for an Amaze-N-Tow trailer to Home Heating Headquarters through an entity named Amaze-N-Tow, Inc. At that time, Amaze-N-Tow, LLC had a Distributor Agreement with Home Heating Headquarters for the sale of Amaze-N-Tow trailers. (Brown Aff. ¶ 26; Pls.' Ex. 1, pgs. 37-40.)

23. Walker was never given authorization to use the trademarks Amaze-N-Tow, ANT, or CycleTow. (Brown Aff. ¶ 18.)

24. On April 12, 2006, Brown sent Walker a letter informing him of his improper use of the ANT and Amaze-N-Tow trademarks and ordering him to immediately cease all use of the trademarks. (Brown Aff. ¶ 23; Pls.' Ex. 1, pg. 36.)

25. In 2005, Amaze-N-Tow, LLC sold fifty-two (52) material handling trailers. (Brown Aff. ¶ 15.)

26. From 2006 through 2008, Amaze-N-Tow, LLC sold only ten (10) material handling trailers. (Brown Aff. ¶ 16.) The sharp decrease is attributable in material part to Walker selling inferior knock-offs at a cheaper price and confusingly trading on the Plaintiffs' name and reputation. If Walker was not marketing and selling such copies, it is likely that Amaze-N-Tow would be selling units at the 2005 level. Moreover, Walker is marketing a CycleTow product that appears identical to the Plaintiffs' product and likewise trades on the Plaintiffs' name and goodwill, creating a false designation of origin.

27. Brown, Spirit, of America, and Amaze-N-Tow, LLC filed suit against Walker on May 30, 2006. (Docket # 1.)

28. On February 5, 2008, Walker failed to appear at a scheduled mediation. (Docket # 69.) As a result, Walker was sanctioned and ordered to pay the Plaintiffs $2803.44 for the fees and expenses incurred by the Plaintiffs as a result of the aborted mediation. (Docket # 104.) Walker has yet to pay the Plaintiffs these funds. (Mot. to Am. ¶ 45.)

6

29. From April 1, 2006 through April 30, 2010, the Plaintiffs incurred $68,501.00 in attorney's fees, of which they claim $58,131.25 is directly attributable to this litigation, and $552.47 in expenses, of which they claim $542.36 stems from this litigation. (First Heck Aff. ¶ 3, 5; Second Heck Aff. ¶ 6, 7.)

## II. CONCLUSIONS OF LAW[5]

The Plaintiffs first ask that they be awarded monetary damages for Walker's conversion of their property, breach of the duty of loyalty, and for failing to appear at a scheduled mediation. The Plaintiffs also request that a permanent injunction issue against Walker concerning his use of the Amaze-N-Tow, ANT, and CycleTow trademarks, and that they be awarded $58,131.25 in attorney fees and $542.36 in costs. The Court will address each request in turn.

A. *Damages for Conversion and Breach of the Duty of Loyalty*.

The Plaintiffs first ask for damages for Walker's conversion of their property and funds, totaling $24,876.03. Specifically, the Plaintiffs are seeking $15,588.00 as the proceeds of trailer sales withheld by Walker; $6,318.33 for the hydraulic pumps misappropriated by Walker; $512.60 for money reimbursed to Walker that he improperly submitted as business expenses; and $2,457.10 for company funds that Walker improperly used to repair his personal vehicle.

The Plaintiffs then ask that pursuant to Indiana Code § 34-24-3-1, these amounts, totaling $24,876.03, be trebled to $74,628.09. Treble damages are available to any party that suffers a pecuniary loss under Indiana Code § 35-43-4-3. A plaintiff seeking to recover treble damages must show by a preponderance of the evidence that the defendant committed the underlying criminal offense. *Ecker v. Rochester Ford New Holland, Inc.*, 694 N.E.2d 289, 291 (Ind. Ct.

---

[5] Fn. 3, *supra*, is incorporated here by this reference.

App. 1998). However, the defendant need not have been convicted of the offense. *American Leasing*, *Inc*. *v*. *Maple*, 406 N.E.2d 333, 335 (Ind. Ct. App. 1980). The decision to award treble damages lies in the discretion of the court. *Ballard v*. *Harman*, 737 N.E.2d 411, 418 n. 5 (Ind. Ct. App. 2000).

The Plaintiffs have established each component of their damages claim. For the $15,588.00 in withheld proceeds from the three trailer sales, the Plaintiffs have offered cancelled checks and correspondence from customers who purchased the three trailers. (Pls.' Ex. 1, pgs. 41-48.) The Plaintiffs have also submitted invoices and receipts for each hydraulic pump order to establish the average price per pump of $274.71, with total losses for 23 pumps in the amount of $6,318.33. (Pls.' Ex. 1, pgs. 49-75.) Similarly, the Plaintiffs have convincingly established that Walker sought, and was improperly reimbursed, $512.60 for repairs to his personal backhoe, and that he misappropriated $2,457.10 from Amaze-N-Tow, LLC's business account for repairs to his personal vehicle. (Pls.' Ex. 1, pgs. 76-126.) Altogether, these damages total $24,876.03.

Furthermore, Walker clearly committed Conversion, a Class A Misdemeanor, by intentionally exercising unauthorized control over the Plaintiffs' property in violation of Indiana Code § 35-43-4-3. Accordingly, the Court recommends that the $24,876.03 in damages for Walker's conversion of their property be trebled to $74,628.09. Such an award does not amount to a windfall, but rather is appropriate to fairly compensate the Plaintiffs for Walker's extensive acts of conversion, as well as his repeated disregard of his fiduciary duties. *See Thor Industries*, *Inc*. *v*. *Schwartzhoff*, No. 3:07-cv-465, 2008 WL 4724007 (N.D. Ind. Oct. 24, 2008) ("[G]iven the extensive bad acts at issue, and defendant's repeated betrayal of his fiduciary duties, the court believes that some exemplary damages under Indiana Code § 34-24-3-1 are appropriate.").

Additionally, the Plaintiffs are entitled to recover the $3,500 in wages paid to Walker from December 9, 2005, to January 6, 2006, since at the same time he was being paid by them, he was also acting on his own behalf, manufacturing and marketing a competing line of knock-offs, thus violating his duty of loyalty. (Pls.' Ex. 1, pg. 127; Brown Aff. ¶¶ 29, 30, 32, 36.) *See* RESTATEMENT (SECOND) OF AGENCY § 469 ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty. . ."); *Wenzel v. Hopper & Galliher, P.C.*, 830 N.E.2d 996, 1001-3 (Ind. Ct. App. 2005).

B. *Damages for Failure to Appear at the Scheduled Mediation.*

The Plaintiffs next ask for damages incurred as a result of Walker's failure to appear at the February 5, 2008, mediation. (Pls.' Mot. ¶ 44-46.) On October 31, 2008, Walker was sanctioned and ordered to pay the Plaintiffs $2803.44 for the fees and expenses incurred as a result of his non-appearance. (Docket # 104.) Walker has yet to pay the Plaintiffs these funds. (Mot. to Am. ¶ 45.) The default judgment should therefore be amended to reduce this amount to a judgment.

C. *Statutory Damages for Trademark Infringement.*

The Plaintiffs also ask in their motion for an award of statutory damages to compensate them for Walker's trademark infringement and false designation of origin. The applicable statute, 15 U.S.C. § 1117(c), provides that "in cases involving the use of a counterfeit mark . . . the plaintiff may elect, *at any time before final judgment is rendered* . . . to recover, instead of actual damages and profits . . . an award of statutory damages" of at least $1,000, but not more than $200,000, per counterfeit mark. (Emphasis added.) And if the Court finds that the infringement was wilful, the Plaintiff may recover up to $2,000,000 per counterfeit mark.

Similarly, 15 U.S.C. § 1117(d) provides for statutory damages of up to $100,000 in cases of trademark cyber-squatting and cyber-piracy.

As an aside, the request for statutory damages is timely, because as 15 U.S.C. 1117(c) notes, the Plaintiffs can elect to receive such damages "before final judgment." And although a default judgment was entered on September 30, 2009, it was not a "final" judgment. "A final judgment is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Riley v. Kennedy*, 128 S.Ct. 1970, 1981 (2008) (internal quotations and citations omitted). On the other hand, "an order resolving liability without addressing a plaintiff's requests for relief is not final." *Id*. Accordingly, the default judgment entry, (Docket # 166), which made no mention of damages, or any other type of relief, was not a "final judgment."

Indeed, the point is illustrated here by the fact that the Seventh Circuit Court of Appeals rejected Walker's appeal of the default judgment precisely because no final judgment had yet been entered. Accordingly, the Plaintiffs are not barred from seeking statutory damages against Walker. *See Perry Ellis Intern., Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (conducting damage inquiry after default judgment entered); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (same).

The Plaintiffs propose an award of $50,000.00 in statutory damages for Walker's wilful use of the counterfeit Amaze-N-Tow trademark, $50,000.00 in statutory damages for Walker's wilful use of the counterfeit ANT trademark, and $25,000.00 in statutory damages for each of the two domain names used by Walker that included a counterfeit trademark.[6] They argue that,

---

[6] The Plaintiffs are not seeking any statutory damages for the CycleTow mark.

10

given Walker's willful infringement of their trademarks, a total award of $150,000 in statutory damages is just.

Although 15 U.S.C. § 1117(c) sets the parameters for statutory damages, it does not indicate how to determine a damage figure within that range. Rather, "[c]ourts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c)." *Lorillard Tobacco Co. v. S & M Cent. Service Corp.*, No. 03-c-4986, 2004 WL 2534378, at *4 (N.D.Ill. Nov. 8, 2004) (quoting *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("Cases decided under the Copyright Act, which deals with a similar problem and a similar legislative grant to discretion, afford guidance here.")). *Accord Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); *Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2001).

The Seventh Circuit Court of Appeals set forth the standard for awarding statutory damages under the Copyright Act in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* framework, the court is "not required to follow any rigid formula but instead enjoys wide discretion" in awarding statutory damages. *Id*. The court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Furthermore, statutory damages may be necessary to "penalize the infringer and deter future violations" when the infringement was willful. *Id*. at 1230. Courts have adopted a similar view with respect to determining the amount of statutory damages under 15 U.S.C. § 1117(d), and primarily consider the bad faith intent of a party to profit by registering a domain name with a confusingly similar

mark. *Automobili Lamborghini, S.p.A. v. Lamboshop, Inc.*, No. 2:07-cv-266, 2008 WL 2743647, at *7-8 (M.D. Fla. June 5, 2008).

It is recommended that under the circumstances of this case, the Plaintiffs be awarded $150,000 in statutory damages; that is, the Plaintiffs should receive $50,000.00 for Walker's use of the counterfeit Amaze-N-Tow trademark, $50,000.00 for use of the counterfeit ANT trademark, and $25,000.00 for the two domain names that included a counterfeit trademark. Walker's infringement of the Amaze-N-Tow and ANT trademarks was done willfully (and indeed, continues) after he was repeatedly ordered to cease such activity. (Pls.' Ex. 1, pg. 36.) *See Tony Jones Apparel, Inc. v. Indigo USA, LLC*, No. 03 c 0280, 2005 WL 1667789, at *8-9 (N.D. Ill. July 11, 2005) (finding wilful infringement and awarding statutory damages after plaintiff sent multiple cease and desists). Furthermore, Walker's online use of the Plaintiffs' marks, and wholesale copying, was done with the bad faith intent of profiting from the infringement. Finally, because the infringement took place largely on the internet—the video advertisements have been viewed at least 100,000 times—it is difficult to assess or calculate the actual losses suffered. Accordingly, statutory damages totaling $150,000 are therefore reasonable and necessary to penalize Walker for his continued and willful misconduct and to deter any future infringement.

D. *The Plaintiffs' Request for a Permanent Injunction.*

The Plaintiffs next ask that the Default Judgment be amended to include an injunction permanently enjoining Walker under 15 U.S.C. § 1116(a) from using the Amaze-N-Tow, ANT,

and CycleTow trademarks.[7] (Mot. to Am. ¶ 13.) To obtain injunctive relief, the Plaintiffs must demonstrate that: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *American Taxi Dispatch v. American Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004-5 (N.D. Ill. 2008) (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007)). Furthermore, it is not necessary that the Plaintiffs prove that they suffered any actual damages in order to obtain an injunction. *Id.* (citing 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:10 (4th ed. 2008)).

The four factors overwhelmingly favor granting an injunction. The Plaintiffs have suffered irreparable injury for which there is no adequate legal remedy. Brown testified that Spirit of America and Amaze-N-Tow, LLC have received numerous complaints and lost substantial goodwill from angry (and obviously confused) customers who bought sub-standard trailers from Walker, all marked as Amaze-N-Tow or ANT, and who believed they were the genuine article. *See Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("We have clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.") Monetary damages, on their own, would be insufficient to correct this injury to the Plaintiffs' business and image.

---

[7] Even though CycleTow is an unregistered trademark, given the default judgment entered in this case, and the fact that Walker is no innocent infringer, the Plaintiffs are entitled to injunctive relief to prevent the false designation of CycleTow's origin. 15 U.S.C. § 1125(a)(1).

Furthermore, the balance of hardships does not weigh against granting an injunction. Walker is not prohibited from manufacturing or selling his own trailers. Rather, he is only prohibited from infringing on the Plaintiffs' trademarks and profiting from their goodwill in the selling of his own products. Finally, the public interest would be served by granting an injunction. "[T]he public has an interest 'in knowing with whom they do business,'" *American Taxi Dispatch*, 582 F. Supp. 2d at 1008-9 (quoting *Re/Max North Cent.*, *Inc.*, 272 F.3d at 433), and in knowing that the products they purchase have been manufactured to necessary safety standards.

Because the four factors clearly support the Plaintiffs' request, the Court recommends that a permanent injunction by entered against Walker under 15 U.S.C. § 1116(a) as follows:

IT IS HEREBY ORDERED that defendant Esler C. Walker, his agents, servants, employees, affiliates, successors and assigns, and any and all persons acting in concert or participation with them who receive actual notice of this Order, are hereby permanently enjoined and restrained:

> (1) from operating under or using, in any facet, the name "Amaze-N-Tow," "ANT," and "CycleTow," or any name confusingly similar to "Amaze-N-Tow," "ANT," and "CycleTow" in connection with the description, marketing, promotion, advertising, or sale of any products or services;
>
> (2) from using, adopting, and displaying colors, shapes, designs, patterns, and lettering similar to the trade dress of Spirit of America Corp. and Amaze-N-Tow, LLC; and
>
> (3) from operating any websites using the trademarks "Amaze-N-Tow," "ANT," and "CycleTow," in whole, or in part, or any name confusingly similar to "Amaze-N-Tow," "ANT," and "CycleTow."

E. *The Plaintiffs' Request for Attorney Fees and Costs*.

Finally, the Plaintiffs seek to recover $58,131.25 in attorney fees and $542.36 in costs expended in conducting this lawsuit. (First Heck Aff. ¶ 3, 5; Second Heck Aff. ¶ 6, 7.) The Lanham Act permits a prevailing party to recover the costs of an action, and in "exceptional

cases," reasonable attorney fees. 15 U.S.C. § 1117(a). "Exceptional cases" include those where the infringement is "malicious, fraudulent, deliberate, or willful." *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) (quoting *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989)).

Based on the Plaintiffs' accusations and uncontested evidence of willfulness, particularly following a default judgment, this lawsuit clearly falls within the realm of an "exceptional case" for the award of attorney fees. *See American Taxi Dispatch*, 582 F. Supp. 2d. at 1008-9. Moreover, the un-rebutted record establishes that Walker has demonstrated a pattern of willful, and malicious infringement lasting several years, and appears to still be ongoing.

The Plaintiffs' lead attorney, Brian Heck, submitted itemized legal bills detailing the services rendered by himself and another attorney at his firm, Matthew J. Elliott. (First Heck Aff. ¶ 3, 5; Second Heck Aff. ¶ 6, 7; Pls.' Exs. 30, 31.) Heck's testimony reveals that the original amount of $68,501.00 in fees was reduced to $58,131.25 and that costs in the amount of $552.47 were reduced to $542.36 to remove unrelated charges. Moreover, during the four years that this case was litigated, the hourly rate of both Heck and Elliott increased from $170.00/hour to $200.00/hour for Heck, and $205.00/hour to $245.00/hour for Elliott. Both the Exhibits (Pls.' Exs. 30, 31) and the testimony reflect that the billing entries relate to this case and that counsel used good billing judgment with no duplication or overlap. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (counsel must "'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

To determine the amount of reasonable attorney fees to be awarded, the Court relies on

the well-known "lodestar" method. *Whitehead v. Gateway Chevrolet, Oldsmobile, Inc.*, No. 03 C 5684, 2004 WL 1073642, at *1 (N.D. Ill. May 7, 2004) (citing *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003)). Under this method, the court first determines the "lodestar" by multiplying the hours reasonably expended on the case (368.25 hours in this instance) by a reasonable hourly rate. *Whitehead*, 2004 WL 1073642, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The court may then adjust this award based on various factors, *see People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 n.1 (7th Cir. 1996), the "most critical" of which is the degree of success obtained by the movant. *Hensley*, 461 U.S. at 436. The movant bears the initial burden of documenting its fees to the satisfaction of the court; once it has done so, those fees are presumptively appropriate unless challenged by the opposing party. *Morales v. Jones*, No. 00-CV-0618-DRH, 2006 WL 268770, at *10 (E.D. Wis. Feb. 1, 2006) (citing *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986)).

Applying the lodestar, and with no upward or downward adjustment, it is recommended that the Plaintiffs be awarded $58,131.25 in attorney fees and $405.09 in costs. The unchallenged attorney fee claim is reasonable, both as to the hourly rate for legal services in Northeast Indiana, as well as the hours expended. The Court will, however, strike $137.27 in shipping and mailing charges from the Plaintiffs' request for costs, as such expenses are ordinarily not recoverable. *See Angevine v. WaterSaver Faucet Co.*, No. 02 c 8114, 2003 WL 23019165, at *9-10 (N.D. Ill. Dec. 23, 2003) (collecting cases on denial of mailing charges as recoverable costs).

## V. CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that the

Plaintiffs' Motion to Amend Default Judgment be GRANTED and the Plaintiffs be awarded damages in the amount of $230,908.30, attorney fees in the amount of $58,131.25, and costs in the amount of $405.09. This Court also recommends that the Plaintiffs be granted a permanent injunction prohibiting Walker from infringing on their trademarks, as set out on Page 14 of this Report and Recommendation.

NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). The Clerk is directed to send a copy of this Report and Recommendation to the Defendant at his last known address.

SO ORDERED.

Entered this 25th day of May, 2010.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge